## SMITH TRANSFER CO., Inc. v. NATIONAL LABOR RELATIONS BOARD.

### No. 14261.

United States Court of Appeals
Fifth Circuit.

May 29, 1953.

Rehearing Denied July 20, 1953.

Jack Crenshaw, Montgomery, Ala., for appellant.

Samuel M. Singer, Nancy M. Sherman, Attys., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, George J. Bott, Gen. Counsel, N. L. R. B., Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Found guilty of unfair labor practices, including: (1) in violation of section 8 (a) (5) refusing to bargain with a labor union as representative of its employees; (2) in violation of section 8(a) (3) discriminatorily discharging some of its employees and refusing to reinstate others; and (3) in violation of Section 8(a) (1) of the Act, 29 U.S.C.A. § 151 et seq., interfering with, restraining and coercing its employees; and ordered to cease and desist and to take affirmative action accordingly, respondent is here by petition to review, complaining of the board's order and seeking to vacate and set it aside.

In support of its claim for relief, petitioner, putting forward ten specifications of error, treats them under six heads.

The first of these presents as fundamental error, crying to high heaven for relief,[1] the action of the board in denying pe-

---

1. In its brief at page 8, the petitioner thus states its grievance:

This case presents a fundamental case of conflict between an administrative body, and the Congressional mandate contained in the law by which such administrative body is established. We think it requires no citation of authority on the proposition that an administrative bureau, established by Act of Congress to administer the National Labor Relations Act, has no authority to amend, evade, or emasculate, the plain provisions of that Statute. Yet, that is the effect of the order of the National Labor Relations Board here under review. Congress provided that an employer should have the right to petition for a determination by secret election, of whether a Union actually represented a majority of the employees. The Board, by its order, has denied to the Petitioner that statutory right, and circumvented it by ordering the employer to negotiate with the Union without such determination. In fact, the Board order goes further, and finds as unlawful the conduct of the employer in refusing to negotiate with the Union while the employer's request for a Board determination was pending.

titioner's request for an election and a determination by the board under section 9(c) (1) (B) whether the demanding union was the exclusive bargaining agent of its employees.

The second and third attack as erroneous, the finding of the board that the union actually represented a majority. One of the claims is, that this finding required the inclusion as an employee of one Arlin Harrison when, as respondent claims, the undisputed facts established that Harrison had ceased to work for petitioner and had obtained another regular and substantially equivalent position. Another is that Harrison had not, as the board found, been discriminatorily discharged, but had voluntarily left its employ, and he was therefore improperly counted by the board as still an employee.

Through its fourth and fifth grounds of error dealing with the finding of the board that Joiner A. Ray and four others were unfairly refused reinstatement after the strike, respondent presses upon us: that the evidence demanded contrary finding: that indeed, they were properly refused reinstatement for cause, because Ray had profanely and violently threatened in the presence of the other four that they would "shake petitioner's trucks to pieces" after they returned to work and the four had associated themselves with and acquiesced in the threat.

Finally, petitioner insists that the strike in question was not a protected, concerted activity, requiring the reinstatement of those who had gone out on strike but was a strike with the illegal objects: (1) of defeating their employer's right under sec-

tion 9(c) (1) (B) to petition the board for an election and determination as to representation; and (2) of coercing the other employees into joining the union.

The board, answering the petition for review and, in its turn requesting enforcement of its order, insists: that its findings and order are amply supported by the record considered as a whole; and that the petition to set it aside should be denied, the petition to enforce it should be granted.

In support of this position, it insists that as to each of its findings and its order, most of the issues raised and presented on the two petitions are simply issues of fact arising solely because of the conflict between the testimony given by the general counsel's witnesses and those offered by the respondent petitioner. It insists in short that this is a typical fact case of the kind dealt with in N. L. R. B. v. Nabors, 5 Cir., 196 F.2d 272, and similar cases from this and other courts, in which the factual determinations of examiner and board, as to the real grounds of the refusal to reinstate and the question of representation are fully supported by the record considered as a whole.

Upon a careful consideration of the evidence as a whole, in the light of the background of anti-union bias and hostility, and the determination not to permit unionization of its business unless compelled to do so, which speaks from the record, we find ourselves in agreement with this view.

■ As we have stated in other cases,[2] "When the record shows such bias", the board's conclusion that the company's refusal to reinstate the employees was moti-

---

We respectfully submit that in so holding the National Labor Relations Board was plainly in error and that its order was contrary to the purpose and effect of the 1947 Amendment to section 9 of the National Labor Relations Act.

2. Cf. N.L.R.B. v. Robbins Tire & Rubber Co., 5 Cir., 161 F.2d 798. We there said 161 F.2d at page 801:

"Unfortunately for Respondent's cause, while the record does contain a great deal of evidence in support of its position that its attitude was correct throughout and that the discharges were for the cause

assigned and not to discourage union membership, the record also contains evidence from which it could be found that Respondent was biased against unionization and that the discharges were because of this. It is settled law that when the record shows such a bias and also shows that men were discharged after their union membership had been brought into question in a manner showing dissatisfaction with and disapproval of it, the findings of the Board that their discharge was for union activities and not for the reason assigned may not be successfully challenged here. * * *"

vated by discriminatory consideration, may not, if supported by any plausible evidence, be successfully challenged here.

The same is true of the finding that the union represented a majority of the employees and that the employer unfairly refused to bargain.

It is true that there is proof of overbearing conduct on the part of one Henderson, who respondent claims was brought into the picture by the union to act as a strong arm man and bully, but this, while deplorable, is not a justification for counter strong-arming on the part of the employer.

It is true, too, that the employer did request, and was denied, an election as to, and a determination by the board of, the representation question and that, unfair labor practices aside, if the request had been made in good faith, because of a real doubt and not as a defense against unionization as such, the board ought to have acceded to the request.

The board, however, found on evidence which we think justified the finding, that the request did not spring from a good faith doubt upon the question of representation but from the anti union hostility of the Transport Company and its determination, at all costs, at every point, and by all available means, to resist and delay unionization. Having so found, it was not obligated to order the election. In short, dominating this record and animating and coloring its conduct on each issue, there stands out in the record evidence establishing the determined opposition of the petitioner to having its men unionized. The record standing thus, the petitioner as to each issue found against it by the board, finds itself confronted with a burden of overthrowing the board's findings which is heavier than it can bear.

Constrained upon the record to declare that petitioner has not sustained its burden, that its petition must be denied, and the petition of the board be granted, we refuse to set the order aside. We order it enforced.

The petition to set aside is denied. The petition to enforce is granted.