### NATIONAL LABOR RELATIONS BOARD v. POULTRY ENTERPRISES, Inc.
### No. 14541.

United States Court of Appeals
Fifth Circuit.
Nov. 4, 1953.

A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, Franklin C. Milliken, Atty. Gen. Counsel and George J. Bott, Gen. Counsel, Bernard Dunau, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

A. C. Wheeler, Emory F. Robinson, and Wheeler, Robinson & Thurmond, Gainesville, Ga., for respondent.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

With the two exceptions hereafter stated and discussed, this case presents an ordinary run of the mill controversy over collective bargaining. It arises out of claims on the one hand and denials on the other that the union, claiming to represent a majority of the employees, was in fact entitled to represent them as bargaining agent.

Upon a record containing at least some evidence supporting the findings, that respondent had, in violation of Sec. 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1), made promises of economic benefit, threats of economic reprisals, and given assistance in the preparation and solicitation of revocations of the union's authority to bargain, the board concluded that respondent's refusal to bargain with the union was violative of Sec. 8(a) (5) (1) of the Act, entered its corrective order [1] accordingly, and brought this proceeding to enforce the order.

Respondent, resisting enforcement, makes a head-on attack upon the findings of examiner and board, as contrary to the truth and right of the case as made upon the record as a whole. Pointing to the fact that the testimony of the few witnesses credited by examiner and board is flatly contradicted by the testimony of witnesses in the ratio of nearly four to one, respondent insists that under teachings and upon the authority of Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, it is the duty of this court to refuse enforcement of the Board's order because unsupported on the record as a whole.

■■ We do not think so. In N. L. R. B. v. Robbins Tire & Rubber Co., 5 Cir., 161 F.2d 798, 800, where the proportion of the witnesses against, to those for, the examiner's conclusions was far greater than it is here, we held exactly to the contrary of this contention. We, therefore, reject that contention, that we can and should in effect review the record *de novo,* determining for ourselves the credibility of the witnesses and the preponderance therefore of the credible testimony.

■■ In the Robbins case we pointed out:

"Unless the credited evidence * * * carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence * * * carries its own irrefutable truth, that is, is of such nature that it cannot in law be discredited, we cannot determine that to credit the one and discredit the other is an evidence of bias."

No such situation is presented here. On the contrary, the record as a whole, including particularly what it shows as to the settled determination of the respondent not to recognize the union, its die hard resistive efforts, vigorous, active, and prolonged, to prevent unionization, does not impeach, it corroborates, the testimony which the examiner and board credited. Unless, then, the enforcement is defeated by the two special matters on which respondent additionally relies to defeat its enforcement, the order finds support in the record and must be enforced.

■■ We turn, then, to these matters. The first is respondent's claim; that, acting in good faith, it had a right to decline to recognize the union; that the board having ordered an election, had no right thereafter to revoke and recall its order, and upon the basis of the unfair labor practice charges, compel the respondent to bargain with the union when it had reason to believe and did believe that the union did not represent the majority of its employees. On this point, the short and simple answer is that in cases involving similar situations to that prevailing here, this

1. The Board's decision and order are reported in 102 NLRB, No. 27.

court has determined that if the refusal to bargain is made in good faith because of a real doubt and not as a defense against unionization as such, respondent does have a right to have those good faith doubts settled by an election. But absent such good faith, which the board correctly found it did not have here, it has no such right. Smith Transfer Co. v. N. L. R. B., 5 Cir., 204 F.2d 738, N. L. R. B. v. Stewart, 5 Cir., 207 F.2d 8.

■ Its second special ground in opposition to the enforcement of the order was the request which was first presented to the board, to take evidence in support of respondent's motion, supported by many signatures of its employees, asserting that the union has now completely lost its authority to represent the employees, that in fact they have repudiated it and have in writing requested the respondent "not to recognize the union". The board denied the motion on the ground that the matter presented was not relevant as a defense to the unfair labor practice proceeding. The matter has been again presented to this court by motion and we, agreeing with the board, deny it for the same reasons.

This does not mean, as respondent seems to think it does, that in a case where, without fault or procurement on its part, employees reach a conclusion that they do not wish a union, which has obtained a position as bargaining agent, to longer represent them, and, still without fault or procurement on its part request their employer not to deal with it as their representative, the employer may commit the unfair labor practice of forcing the union upon its employees as their representatives. The contrary of this has been held in N. L. R. B. v. Vulcan Forging Company, 6 Cir., 188 F.2d 927; N. L. R. B. v. Mayer, 5 Cir., 196 F.2d 286. Cf. N. L. R. B. v. Aldora Mills, 5 Cir., 197 F.2d 265, 266. Indeed, the very fundamental theory and philosophy lying back of Section 7 of the Act, 29 U.S.C.A. § 157, the precise language of the act, forbids this view. Cf. Midcontinent Petroleum Corp. v. N. L. R. B., 6 Cir., 204 F.2d 613, certiorari denied, 74 S.Ct. 71.

■ The act does, however, require, and we and the other courts have many times held, that where an employer is responsible for destroying the union's majority and by interference has broken up its membership and turned the employees against it as representative, it cannot, without affording a reasonable opportunity for the union to proceed as bargaining representative, decline to bargain with it and thus reap the benefits of its obstructive and unlawful acts.

One of the earliest cases in which this court, realizing the difficulties inherent in the problem, endeavored to deal justly with the conflicting claims arising out of the effort by a respondent, on the one hand, to relieve itself from the consequences of its unfair labor practices and of the employees to relieve themselves from representation by a union which no longer represented the majority of them, is N. L. R. B. v. Riverside Mfg. Co., 5 Cir., 119 F.2d at pages 302–305 and 306. Since that decision was written the statute has been amended and the board's right and authority to deal with such a situation has been fully recognized and established. We cannot assume that the board is any less conscious of the problem which respondent now asserts this case presents or will be less alert to protect not the union, which claims to be the representative, and not the employer, which has been found guilty of unfair labor practices, but the employees from the deprivation of rights accorded them by the act.

■ While the finding is not important to the result, we think we should say with respect to the board's finding of surveillance and the provision of the order with respect to it, that an examination of the record shows that this finding is without substantial evidence to support it, is indeed based on no more than suspicion and conjecture.

With this one exception, the board's findings are approved as based upon substantial evidence and its order is

Enforced.